Filed 2/15/22; opinion on transfer from Supreme Court

## CERTIFIED FOR PARTIAL PUBLICATION[*]

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F076838 |
| Plaintiff and Respondent, | (Super. Ct. No. BF164349B) |
| v. | |
| MARTIN SANCHEZ, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Kern County. Michael E. Dellostritto, Judge.

Cynthia Lee Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Martin Sanchez was convicted of attempted murder and assault with a firearm after his acquaintance fired a shotgun during a confrontation with other men. To prove attempted murder, the prosecutor argued Sanchez directly aided and abetted the shooter

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I of the Discussion.

and, alternatively, that attempted murder was a natural and probable consequence of assault with a firearm.

Previously, we addressed three claims on appeal. One, was the evidence sufficient to prove attempted murder? Two, does the natural and probable consequences doctrine violate due process? Three, did Senate Bill No. 1437 (Stats. 2018, ch. 1015) (SB 1437), which added section 1170.95 to the Penal Code[1] and amended sections 188 and 189, eliminate the natural and probable consequences doctrine as a basis to prove an accomplice committed attempted murder?

We held the evidence sufficiently proved attempted murder and the natural and probable consequences doctrine did not violate due process, but, pursuant to SB 1437, the natural and probable consequences doctrine no longer attached accomplice liability to attempted murder.[2] Accordingly, we reversed the judgment.

The People petitioned the Supreme Court for review. The petition was granted on June 10, 2020. (*People v. Sanchez*, review granted Jun. 10, 2020, S261768.) Prior to resolution by the Supreme Court, the Legislature enacted Senate Bill No. 775 (Stats. 2021, ch. 551) (SB 775). That law clarified SB 1437 by amending section 1170.95 to make clear the natural and probable consequences doctrine no longer supplies accomplice liability to attempted murder.

Thereafter, the Supreme Court transferred the matter back to this court with directions to vacate our prior opinion and reconsider in light of SB 775. (*People v. Sanchez*, Jan. 5, 2022, S261768.) Having done so, we again reach the same conclusions: The evidence was sufficient to prove attempted murder, but the natural and probable

---

[1] Undesignated statutory references are to the Penal Code.

[2] SB 1437 did not explicitly apply to attempted murder but we interpreted section 1170.95 and the amendments to sections 188 and 189 to also eliminate the natural and probable consequences doctrine as a basis to attach accomplice liability to attempted murder.

consequences doctrine cannot prove an accomplice committed attempted murder.[3] Because we are unable to conclude the jury did not rely on this now-invalid theory, we must vacate the judgment and reverse the attempted murder conviction.

## BACKGROUND

The Kern County District Attorney filed an information charging Sanchez with the following felonies stemming from an incident occurring on May 30, 2016: attempted murder (§ 187, subd. (a); count 1), with a weapon enhancement (§ 12022, subd. (a)(1), and assault with a firearm (§ 245, subd. (a)(2); count 2).

**Trial Evidence**

While Sanchez was at a local park with his family, he was confronted by four men concerning title to a vehicle. The men threatened Sanchez physically and challenged his masculinity. Sanchez, angered, left the park and drove his family home.

But Sanchez did not stay home. Instead, he picked up an acquaintance known as "poder negro[,] which translates to black power." Sanchez informed his acquaintance, the eventual shooter, about the earlier confrontation. The shooter entered the pickup with an "object … covered" in a sunshade. Sanchez claimed he believed the shooter was concealing "a bat or something" but expressed no concern or reservation about the weapon. Sanchez, knowing a fight might result, drove back to the park.

Once at the park, Sanchez and the shooter approached the men involved in the earlier confrontation. The parties separated into two groups. The shooter and two men walked towards the river. The shooter eventually dropped the sunshade, revealed a

---

[3] As noted, in the original opinion we addressed Sanchez's claim the natural and probable consequences doctrine violates due process. We do not again discuss the merits because it is technically moot after SB 775. We note, however, our Supreme Court to date has rejected similar challenges. (See *People v. Richardson* (2008) 43 Cal.4th 959, 1021-1022; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 107; *People v. Garrison* (1989) 47 Cal.3d 746, 777-778.)

shotgun, and fired towards the victim. As the victim ran, the shooter gave chase and fired once more. The victim was shot in the face and back.

After the gunshots, a witness in the park heard "tires screeching" and "burning rubber" as a pickup drove towards the shooter. The shooter entered the pickup, driven by Sanchez, and headed towards the exit. The witness believed their efforts were coordinated.

## Instructions and Argument

The court, in part, instructed the jury as follows:

> "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. … Two, he or she may have aided and abetted a perpetrator, who directly committed the crime.
>
> "A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator.
>
> "Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime." (CALCRIM No. 400.)

The court next instructed the jury on direct aiding and abetting principles. (CALCRIM No. 401.)

The court then explained the natural and probable consequences doctrine:

> "[A] person who is guilty of one crime may also be guilty of other crimes that were committed at the same time.
>
> "To prove the defendant is guilty of attempted murder … the People must prove that:
>
> "1. The defendant is guilty of assault with a firearm …;
>
> "2. During the commission of assault with a firearm … a coparticipant in that assault with a firearm … committed the crime of attempted murder …;

4.

"AND

"3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of attempted murder … was a natural and probable consequence of the commission of assault with a firearm …." (CALCRIM No. 402.)

The prosecutor argued both theories to the jury: "[Y]ou can find him guilty as an aider and abettor or you can find him guilty of wanting to do a crime that naturally leads to attempted murder."

**Verdict and Sentence**

Sanchez was found guilty as charged. The verdicts did not specify an attempted murder theory. He was sentenced to serve eight years in prison.

## DISCUSSION

We first address whether the evidence was sufficient to prove attempted murder. We then discuss the natural and probable consequences doctrine relative to attempted murder and SB 775. Finally, we analyze the resulting prejudice in this case.

**I. The Evidence Sufficiently Proved Attempted Murder**

"There are two distinct forms of culpability for aiders and abettors. 'First, an aider and abettor with the necessary mental state is guilty of the intended crime.' " (*People v. Chiu* (2014) 59 Cal.4th 155, 158 (*Chiu*).) " 'A "person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." ' [Citation.] '[T]o be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted

5.

murder as an aider and abettor must intend to kill.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 (*Nguyen*).)

" 'Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.' " (*Nguyen, supra,* 61 Cal.4th at p. 1054.) " 'Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction." (*Id.* at p. 1055.)

" 'Second, under the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime, but also "for any other offense that was a 'natural and probable consequence' of the crime aided and abetted." ' " (*Chiu, supra,* 59 Cal.4th at p. 158.) " 'Thus, for example, if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault.' " (*Id.* at p. 161.) A natural and probable consequence is "judged objectively …. [Citation.] The inquiry does not depend on whether the aider and abettor actually foresaw the" unintended offense. (*Id.* at pp. 161-162.)

" '[T]o be reasonably foreseeable "[t]he consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough …." ' [Citations.] A reasonably foreseeable consequence is to be evaluated under all the factual circumstances of the individual case …." (*People v. Medina* (2009) 46 Cal.4th 913, 920.)

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] … We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the

6.

evidence.  [Citation.]  If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]  A reviewing court neither reweighs evidence nor reevaluates a witness's credibility."  (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

The prosecutor here argued both theories to prove guilt. We find the evidence sufficient to prove each attempted murder theory and the assault with firearm conviction. To find proof beyond a reasonable doubt Sanchez directly aided and abetted attempted murder, a reasonable trier of fact could justifiably focus on the following credible evidence and inferences.

Sanchez was angry after he was challenged and insulted in front of his family.  He left the park but chose to return despite knowing the potential consequences.  He did not return alone.  His acquaintance, the shooter, learned of the earlier confrontation.  The shooter entered the pickup with a shotgun.  A reasonable juror could infer the shooter had to first retrieve a shotgun before entering the pickup and would only do so after learning they would return to the park.  Sanchez and the shooter must have known each other well because the shooter was willing to bring a loaded shotgun to the park and approach the victim's group without any apparent hesitation.

Once at the park, Sanchez and the shooter confronted the victim's party.  A reasonable juror could infer the shooter purposefully lured the eventual victim away so as to both minimize the possibility of a potential counterattack and to maximize the probability of success.  A reasonable juror could further infer the shooter intended to kill because he fired once, chased the victim, and fired again.

After the shots were fired, Sanchez drove so quickly to the shooter his "tires [were] screeching …."  Together, they fled the park in the pickup.  A reasonable juror could infer the entire scheme was coordinated.  Indeed, one witness testified it appeared

7.

coordinated. This evidence sufficiently proves aiding and abetting attempted murder and assault with a firearm.

The evidence is also sufficient to prove attempted murder under the natural and probable consequences theory. Sanchez told his acquaintance about the earlier confrontation. They then decided to travel back to the park with the shotgun in tow. Sanchez himself admitted a fight was possible and believed his acquaintance was armed with a purpose. Although Sanchez said he believed the shooter was armed with a bat, a reasonable juror was entitled to discredit Sanchez's statement and instead reasonably infer he knew the acquaintance was armed with a shotgun. (See *People v. Miranda* (2011) 192 Cal.App.4th 398, 409-410.) This inference is reasonable because Sanchez chose to contact this specific acquaintance, discuss the prior confrontation, and the acquaintance then armed himself and entered the pickup with the intent to approach the victim's party despite being outnumbered, i.e., the shotgun would help even the numbers.

A reasonable juror could infer Sanchez and the shooter intended to approach and intimidate the victim's group by aiming the loaded shotgun at them which constitutes assault with a firearm. (See *People v. Penunuri* (2018) 5 Cal.5th 126, 147.) Judged objectively, a reasonable person would foresee a physical fight resulting based on both the earlier confrontation and the fact the acquaintance entered the pickup with the shotgun and, with knowledge of the preceding confrontation, agreed to return to the park without any evident apprehension or debate. In other words, the shooter was neither contacted for nor present to provide moral support.

Considering the entire circumstances, it is reasonably foreseeable that during the resulting fight the armed acquaintance would shoot with an intent to kill. When one intends an assault with a firearm, and an unintended attempted murder results with the

same firearm, the attempted murder is reasonably foreseeable.  Such a conclusion is nearly axiomatic and sufficient to prove attempted murder in this case.[4]

## II.  SB 775 Eliminates the Natural and Probable Consequences Doctrine As a Basis To Prove An Accomplice Committed Attempted Murder

SB 775 amended section 1170.95.  As relevant, it now reads:  "A person convicted of murder, attempted murder, or manslaughter whose conviction is not final may challenge on direct appeal the validity of that conviction based on the changes made to Sections 188 and 189 by Senate Bill 1437 (Chapter 1015 of the Statutes of 2018)." (§ 1170.95, subd. (g).)  Because section 188, subdivision (a)(3), prohibits imputing malice based solely on participation in a crime, the natural and probable consequences doctrine cannot prove an accomplice committed attempted murder.  Accordingly, the natural and probable consequences doctrine theory urged in the underlying trial is now invalid.[5]

## III.  The Resulting Prejudice Requires Reversal

Because an accomplice-defendant cannot be convicted of attempted "murder under the natural and probable consequences doctrine, we must determine whether giving the instructions here allowing the jury to so convict defendant was harmless error.  When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground.  [Citations.]  [Sanchez's attempted] murder conviction must be reversed unless we conclude beyond a reasonable doubt that the jury

---

[4] This conclusion disposes of Sanchez's additional claim the evidence was insufficient under the natural and probable consequences doctrine because the shooting was "independent of the common plan to commit the … assault …." (*People v. Smith* (2014) 60 Cal.4th 603, 613.)  As illustrated, the jury could justifiably find otherwise.

[5] The People declined to address the issue after the Supreme Court ordered us to reconsider in light of SB 775.

based its verdict on the legally valid theory that [he] directly aided and abetted the [attempted] murder." (*Chiu, supra,* 59 Cal.4th at p. 167.)

We presume the legally invalid theory infected the verdict because jurors are not " ' "equipped to determine whether a particular theory of conviction submitted to them is contrary to law …." ' " (*In re Martinez* (2017) 3 Cal.5th 1216, 1224.) We "must reverse the conviction[s] unless, after examining the entire cause, including the evidence, and considering all relevant circumstances," we determine the error is "harmless beyond a reasonable doubt." (*People v. Aledamat* (2019) 8 Cal.5th 1, 13.)

The court instructed the jury on both direct aiding and abetting and the natural and probable consequences doctrine as theories to prove attempted murder. The prosecutor argued both theories to the jury. The jury returned a general verdict finding Sanchez guilty of attempted murder.

After carefully reviewing the record, we conclude it does not provide any insight into the jury's deliberations and the theory underlying the verdict is impossible to divine. The resulting error is not harmless beyond a reasonable doubt and we must reverse the attempted murder conviction.

## DISPOSITION

The judgment is vacated and the attempted murder conviction is reversed.

SNAUFFER, J.

WE CONCUR:

SMITH, Acting P. J.

MEEHAN, J.

10.